UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BERNARD L., <br><br> Plaintiff, <br><br> v. <br><br> ANDREW SAUL, <br>  COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | No. 19 CV 1223 <br><br> Magistrate Judge McShain |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Bernard L. brings this action under 42 U.S.C. § 405(g) for judicial review of the Social Security Administration's (SSA) decision denying his application for benefits. For the following reasons, the Court grants plaintiff's motion for summary judgment [12][1] and denies the Commissioner's motion for summary judgment [17], reverses the SSA's decision, and remands this case for further proceedings.

**Background**

In May 2012, plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging an onset date of October 16, 2012. [7-1] 15. Plaintiff's claim was denied initially, on reconsideration, and after a hearing before an administrative law judge (ALJ). [*Id.*]. After the Appeals Council denied further

---

[1] Bracketed numbers refer to entries on the district court docket. Referenced page numbers are taken from the CM/ECF header placed at the top of filings. However, citations to the administrative record [7-1, 7-2] refer to the page number in the bottom right corner of each page.

review, plaintiff appealed to this Court. *See Bernard L. v. Berryhill*, No. 17 C 3130 (N.D. Ill.). The Court granted the parties' agreed motion for reversal with remand pursuant to the fourth sentence of 42 U.S.C. § 405(g). [7-2] 1052.

On April 11, 2018, and in accordance with this Court's remand order, the Appeals Council entered an order formally vacating the ALJ's earlier decision and remanding the case to the ALJ. [7-2] 1075-77. This order also noted that plaintiff had filed a subsequent claim for Title II disability benefits in May 2017, that "[t]he State agency found the claimant disabled as of February 18, 2016," and that the Appeals Council found that the State agency's decision was supported by substantial evidence. [*Id.*] at 1076. Accordingly, the Appeals Council directed the ALJ to decide whether plaintiff was disabled before February 18, 2016. [*Id.*].

On December 3, 2018, the ALJ found that plaintiff "has been disabled . . . beginning on June 26, 2015–but not at any time prior thereto." [7-2] 960. Plaintiff did not file exceptions to the ALJ's decision, and the Appeals Council did not assume jurisdiction over his case. [1] 2, ¶ 7. The ALJ's decision thus constitutes the SSA's final decision, and this Court has jurisdiction under 42 U.S.C. § 405(g). *See* 20 C.F.R. § 404.484(a) ("when a case is remanded by a Federal court for further consideration, the decision of the administrative law judge will become the final decision of the Commissioner after remand on your case unless the Appeals Council assumes jurisdiction of the case").

2

**Legal Standard**

The Court reviews the ALJ's decision deferentially to determine if it is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is a standard that "requires more than a mere scintilla of proof and instead such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Walker v. Berryhill*, 900 F.3d 479, 482 (7th Cir. 2018) (internal quotation marks omitted).

Under the Social Security Act, disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The regulations prescribe a five-part sequential test for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The SSA must consider whether (1) the claimant has performed any substantial gainful activity during the period for which he claims disability; (2) the claimant has a severe impairment or combination of impairments; (3) the claimant's impairment meets or equals any listed impairment; (4) the claimant retains the residual functional capacity (RFC) to perform his past relevant work; and (5) the claimant is able to perform any other work existing in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4); *see also Apke v. Saul*, 817 F. App'x 252, 255 (7th Cir. 2020).

**Discussion**

At step one, the ALJ determined that plaintiff has not engaged in substantial gainful activity since the alleged onset date. [7-2] 945. At step two, the ALJ found that plaintiff had three severe impairments: cervical and lumbar degenerative disc disease, carpal tunnel syndrome, and generalized anxiety disorder/panic disorder. [*Id.*] 946. At step three, the ALJ ruled that plaintiff's impairments did not meet or medically equal the severity of any listed impairment. [*Id.*] 947-49. At step four, the ALJ determined that, before June 26, 2015, plaintiff had the residual functional capacity (RFC) to perform the full range of light work defined in 20 C.F.R. § 404.1567(b), subject to certain limitations–including that plaintiff only "occasionally interact with supervisors and co-workers[.]" [*Id.*] 950. Finally, at step five, the ALJ ruled that, before June 26, 2015, there were jobs that existed in significant numbers in the national economy–small parts assembler, label coder, and housekeeping cleaner–that plaintiff could perform. [*Id.*] 959-60. The ALJ thus concluded that plaintiff was not disabled before June 26, 2015.

**A. The ALJ Erred at Step Five**

Plaintiff argues that the ALJ's step five ruling that there were jobs existing in significant numbers in the national economy that he could perform is inconsistent with the Vocational Expert's (VE) testimony. [7-2] 959-60. At the hearing, the VE testified that a hypothetical claimant with plaintiff's RFC–including the limitation to only occasional contact with coworkers and supervisors–could work as a small parts assembler, label coder, and housekeeping cleaner. [*Id.*] 1007-08. On cross-

examination, however, the VE explained that these jobs were classified as Specific Vocational Preparation (SVP) Level 2, and that SVP Level 2 jobs have a "training period" of "up to 30 days." [*Id.*] 1016.[2] When plaintiff's counsel asked whether a claimant limited to occasional contact with coworkers and supervisors could maintain that limitation during a thirty-day training period, the VE testified that this would not be possible:

> Q: Okay. And, if somebody was limited to occasional contact with co-workers and supervisors would that be possible during that 30-day period?
>
> A: No, it would not.
>
> Q: So an SVP 2 job that has a 30-day training period would not allow the limitation of occasional contact?
>
> A: Correct, because they would have to be in contact with their co-workers to learn the job.

[*Id.*] 1016.

Plaintiff contends that the ALJ's ruling that he can perform the SVP 2 positions is inconsistent with the VE's testimony because, when the ALJ crafted plaintiff's RFC, the ALJ limited plaintiff to only "occasionally interact[ing] with supervisors and co-workers[.]" [7-2] 950. The Court agrees.

Based on the ALJ's undisputed RFC determination, plaintiff is limited to only "occasionally interact[ing] with supervisors and co-workers." [7-2] 950. Although the VE initially testified that a hypothetical claimant with plaintiff's RFC could perform

---

[2] SVP refers to "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles, App'x C, § II, *available at* https://occupationalinfo.org/appendxc_1.html#II (last visited Nov. 24, 2020).

5

the three SVP 2 jobs, the VE later testified that (1) SVP 2 positions have a training period of "up to 30 days"; (2) "it would not" be possible for the hypothetical claimant to have only "occasional contact with co-workers and supervisors . . . during that 30-day period"; and, consequently, (3) "an SVP 2 job that has a 30-day training period would not allow the limitation of occasional contact" because the claimant "would have to be in contact with their co-workers to learn the job." [*Id.*] 1016. The VE did not try to resolve this contradiction during her testimony, and the ALJ's decision ignores this issue entirely.

The ALJ's step five determination cannot stand because it ignores the obvious contradiction between plaintiff's limitation to only occasional interactions with supervisors and coworkers and the VE's testimony that a claimant with that limitation could not perform an SVP 2 job with a thirty-day training period. *E.g.*, *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (reversing ALJ's decision that was "replete with examples of cherry-picking evidence supporting his finding while ignoring contradictory evidence").

The Court's conclusion is consistent with several persuasive decisions recognizing that an ALJ commits reversible error by failing to reconcile her finding that a plaintiff's RFC permits him to work in the national economy with a VE's testimony that the plaintiff's limitations preclude him from completing a job's training or probationary period.

In *Potrebic v. Berryhill*, Case No. 2:17-cv-00462-JVB-APR, 2019 WL 1397477, at *2 (N.D. Ind. March 27, 2019), the ALJ asked the VE to consider a hypothetical

6

claimant of plaintiff's age, education, and work history but who was limited to appropriate but superficial contact with coworkers and supervisors. The VE testified that "learning a job required more than superficial contact with a supervisor, even in unskilled jobs," and that plaintiff's limitation to "superficial dealing with supervisors would lead to being unable to perform any job." *Id.* In response to a question from plaintiff's counsel, the VE clarified that "if [the] superficial contact" limitation "is going to apply to the training period then there would be no jobs" that plaintiff could perform. *Id.* (some internal brackets omitted). The ALJ's RFC determination limited plaintiff to only superficial contact with supervisors and coworkers, but the ALJ "still found on the basis of the VE's testimony [that] Plaintiff was capable of performing work in the national economy." *Id.*

On appeal, the district court held that "[t]he ALJ contradicted herself in using an RFC which the VE found would preclude all work, yet she found that there were jobs in the national economy that Plaintiff could perform." *Potrebic*, 2019 WL 1397477 at *3. In light of the VE's testimony, moreover, the district court found that "[t]he ALJ's RFC determination in this case yields but one supportable conclusion: that Plaintiff cannot perform full time work and is disabled." *Id.* Because of the "obvious and problematic step five error," the district court remanded the case for an award of benefits. *Id.*

The court reached the same result in *McLaughlin v. Comm'r of Soc. Sec.*, Case No. 3:17-cv-424, 2019 WL 125761 (S.D. Ohio Jan. 8, 2019). In that case, the VE testified that a hypothetical claimant like the plaintiff, who was limited to occasional

7

interactions with coworkers and supervisors and could not perform duties involving teamwork or shared tasks, could work as a mail clerk or a sorter. On cross-examination, however, the VE explained that those jobs "require some type of training or probationary period" that "would include instruction from either a supervisor or coworker" as well as "some degree of shared tasks." *Id.* at *3 (internal quotation marks and bracket omitted). "After additional, extensive questioning," the VE testified that a claimant who "could not engage in teamwork or shared tasks" would "not be able to weather the probationary period of these unskilled jobs." *Id.* (internal quotation marks omitted). Nevertheless, the ALJ ruled that plaintiff was not disabled because he could perform the mail clerk and sorter positions. *Id.*

On appeal, the Commissioner conceded that the ALJ erred at step five but asked the district court to remand the case so the ALJ could resolve the supposed inconsistencies between the RFC determination and the VE's testimony. *Id.* at *3. But the district court found that there were no inconsistencies to resolve: because the VE's testimony established that "a person with Plaintiff's RFC would be unable to complete the probationary period," plaintiff "could not perform jobs that exist in the national economy" and the "record adequately establishes Plaintiff's entitlement to benefits." *Id.* (internal quotation marks).

In *Mosher v. Saul*, Case No. 5:18cv109/EMT, 2019 WL 3779995, at *6 (N.D. Fla. Aug. 12, 2019), the VE testified that a hypothetical claimant with plaintiff's RFC could perform three light-duty jobs. When the ALJ asked the VE to assume that the hypothetical claimant "was consistently absent two days a month," the VE testified

8

that such a limitation would preclude the claimant from working because "if you're in a probationary period, in entry-level positions, which is a 30 to 90 day period, the employee is usually not allowed to miss any" work days. *Id.* Despite this testimony, the ALJ found that plaintiff's RFC–which included one absence per month–enabled her to work as an office work assistant, ticket taker, and mail sorter. *Id.*

Plaintiff appealed, and the district court concluded that "[t]he ALJ's finding at step five cannot be upheld." *Mosher*, 2019 WL 3779995 at *6. Given the VE's testimony that "a person with Plaintiff's RFC–particularly the requirement that she miss one day of work per month–would not be able to sustain employment in entry-level positions that have probationary periods," it appeared to the district court that "Plaintiff cannot perform [the jobs] identified by the VE because she would not be able to maintain employment during the probationary period(s) for these occupations[.]" *Id.* Because the ALJ "did not recognize, consider, or resolve this issue during the VE's testimony or later in her written opinion," the court found that "the ALJ erred." *Id.* However, because the VE "did not definitively state that the three jobs at issue are in fact 'entry-level positions,' or that each entails a probationary period," *id.* at 6, the district court did not think it "clear that the cumulative effect of the evidence establishes disability without doubt," *id.* at *7. Accordingly, the court remanded the case for further administrative proceedings.

As in each of these cases, the ALJ here failed to resolve the contradiction between her finding that plaintiff's RFC enabled him to work in the national economy and the VE's testimony that one of plaintiff's limitations jeopardized his ability to

9

complete a job's training period. This was a critical error because the ability to complete a training period or "probationary period is . . . tantamount to the ability to keep a job, and as multiple circuits have recognized, the ability to keep a job is a necessary prerequisite to the ability to engage in substantial gainful activity." *Sczepanksi v. Saul*, 946 F.3d 152, 158-59 (2d Cir. 2020).

None of the Commissioner's arguments provides a basis to uphold the ALJ's step five determination.

The Commissioner first urges the Court to follow *Hemby v. Berryhill*, No. 4:15 CV 1471 ACL, 2017 WL 951785 (E.D. Mo. Mar. 10, 2017). [18] 13-14. In that case, plaintiff was limited to only occasional interactions with supervisors, and the ALJ determined that plaintiff's RFC allowed him to perform three kinds of jobs. *Hemby*, 2019 WL 951785 at *11. At the hearing, the VE testified that, although plaintiff would have "more frequent contact with the supervisor" during each job's probationary period than plaintiff's RFC would otherwise allow, plaintiff was nevertheless able to perform those jobs. *Id.*

The district court rejected plaintiff's argument that there was a contradiction between the VE's testimony concerning the probationary period and the ALJ's RFC determination. On the contrary, the district court found, "despite the testimony . . . regarding an initial training period requiring more interactions with supervisors," the VE "ultimately found that [plaintiff] could perform" the jobs at issue. *Id.* In the district court's view, moreover, accepting plaintiff's argument would be "untenable" because it would mean that "every time a claimant is limited in his interactions with

10

supervisors, the ALJ would be required to determine that the claimant is entitled to benefits because the training for a job necessarily involves more frequent contact with supervisors." *Id.* (internal quotation marks omitted).

The Court is not persuaded by *Hemby*. First, *Hemby* is distinguishable because, unlike the VE in that case, the VE here never testified that plaintiff could perform the SVP 2 positions despite needing to have more frequent contact with coworkers and supervisors during the training period. *See Kenneth P. v. Saul*, No. 4:19-cv-0059-JMS-DML, 2019 WL 6463449, *6 (S.D. Ind. Dec. 2, 2019) (reversing ALJ's decision based on identical step five error because "absent from the VE's testimony is any explicit reconsideration of the hypothetical claimant's ability to perform the representative jobs after the issues of instruction and the probationary period were raised, as was the case in *Hemby*"). Second, the Court "rejects the proposition that it would be 'untenable' to require ALJs to arrive at a finding of disability whenever the claimant's limitations necessitate that finding; indeed, that is the very purpose of the disability inquiry and the only appropriate result." *Kenneth P.*, 2019 WL 6463449 at *6. Third, dismissing plaintiff's argument as "untenable" because it supposedly leads to an award of benefits whenever the claimant is limited in his interactions with coworkers and supervisors ignores the ALJ's ability, in an appropriate case, to craft an RFC that distinguishes between the job itself and the job's training period. *See, e.g.*, *Yancey v. Berryhill*, No. 16 C 10836, 2018 WL 1278192, at *9 (N.D. Ill. Mar. 12, 2018) (ALJ's RFC determination found that plaintiff was "suited for work dealing with things as opposed to people, but he would be able to respond appropriately

11

during training sessions regarding simple and routine jobs tasks for a training period not to exceed thirty days").

Next, the Commissioner argues that *Potrebic* is distinguishable because the ALJ in that case ignored the "VE's explicit testimony that the claimant could not perform the jobs listed." [18] 14. Unlike in *Potrebic*, the Commissioner contends, here the VE "did not amend her initial testimony that a hypothetical person with the RFC posited by the ALJ could do the three jobs she identified." [*Id.*]. This argument has no merit, as it is the ALJ's failure to resolve the inconsistency between the VE's testimony that, on the one hand, plaintiff could perform three SVP 2 level positions but, on the other, an SVP level 2 position with a thirty-day training period "would not allow the limitation of occasional contact," [7-2] 1016, that requires reversal.

Finally, the Commissioner argues that the VE testified that only the small parts assembler position, and not the label coder or housekeeping cleaner positions, was an SVP level 2 position, meaning that plaintiff could perform the latter two jobs. [18] 14. Even if that were an accurate reading of the VE's testimony–and it is not, because the VE testified that "these particular jobs" at issue in the ALJ's hypothetical were "SVP 2" positions [7-2] 1016–the ALJ determined that all three jobs at issue were SVP level 2. [*Id.*] 960.

For all these reasons, the Court holds that the ALJ erred at step five.

## B. Remand Is the Appropriate Remedy

Having found that the ALJ committed reversible error at step five, the Court must decide whether to remand the case for further proceedings or for an award of benefits.

"Courts have the statutory power to affirm, reverse, or modify the Social Security Administration's decision, with or without remanding the case for further proceedings." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). "This power includes the courts' ability to remand with instructions for the Commissioner to calculate and award benefits to the applicant." *Id.* "An award of benefits is appropriate, however, only if all factual issues involved in the entitlement determination have been resolved and the resulting record supports only one conclusion—that the applicant qualifies for disability benefits." *Id.*

Plaintiff argues that he is entitled to an award of benefits because his RFC, considered in light of the VE's testimony, precludes all work. [13] 5. The Commissioner's brief, which argues only that no error occurred at step 5, does not address this issue.

The Court finds that a remand for further proceedings, rather than an award of benefits, is the appropriate remedy. Contrary to plaintiff's argument, the VE did not testify that *all* SVP 2 level jobs "require[ ] a 30-day training period." [13] 4. Rather, the VE testified that SVP 2 positions in general include a training period of "up to 30 days." [7-2] 1016.[3] And while the VE testified that a limitation to only

---

[3] The Court notes that this portion of the VE's testimony is consistent with the Dictionary of Occupational Titles, which states that the training period for an SVP 2 position can be

13

occasional interactions with supervisors and coworkers would preclude a claimant from working in an SVP 2 position that included a thirty-day training period, she did not testify whether that limitation would likewise preclude working in an SVP 2 position with a shorter training period. [*Id.*]. Nor, finally, did the VE testify about the length of training periods for the small parts assembler, label coder, and housekeeping cleaner positions. [*Id.*].

Given this gap in the record–a gap that the ALJ should have resolved at the hearing or in her written decision–this case is closer to *Mosher* than it is to *Potrebic* and *McLaughlin*. In *Mosher*, the district court found that further proceedings were required because, although the VE testified that a claimant with plaintiff's limitations would not be able to complete the probationary period of an entry-level job, the VE did not testify whether the jobs at issue were, in fact, entry-level or required a probationary period. 2019 WL 3779995 at *6-7. In contrast, the VEs in *Potrebic* and *McLaughlin* testified unequivocally that a claimant with those plaintiffs' limitations could not complete the training or probationary periods for the jobs at issue. *See Potrebic*, 2019 WL 1397477 at *2-3; *McLaughlin*, 2019 WL 125761 at *3. There was thus no factual determination left for the ALJ to make, and an award of benefits was the proper result.

---

"[a]nything beyond short demonstration up to and including 1 month." [3] SVP refers to "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles, App'x C, § II, *available at* https://occupationalinfo.org/appendxc_1.html#II (last visited Nov. 24, 2020).

Because the record in this case does not definitively establish that plaintiff's RFC precludes him from performing the three SVP 2 positions identified by the ALJ, an award of benefits is not warranted. Rather, this case will be remanded to the SSA for further proceedings consistent with this Memorandum Opinion and Order.

## Conclusion

Plaintiff's motion for summary judgment [12] is granted and the Commissioner's motion for summary judgment [17] is denied. The decision of the SSA is reversed, and, in accordance with the fourth sentence of 42 U.S.C. § 405(g), this case is remanded for further proceedings consistent with this Memorandum Opinion and Order.

_____
**HEATHER K. McSHAIN**
**United States Magistrate Judge**

**DATE: November 30, 2020**